PINCONNING STATE BANK v. HENRY.

1. PAYMENT—APPLICATION—CHATTEL MORTGAGES—LAND CONTRACT.
   Where land contract on farm had been foreclosed for full
   amount due, amount thereafter received by vendor from sale
   of farm products should have been credited on chattel mort-
   gage given to vendor by vendee rather than on land contract,
   if no other indebtedness existed.

2. CHATTEL MORTGAGES—SUBSEQUENT INDEBTEDNESS.
   Provision in chattel mortgage that it is given to secure indebted-
   ness subsequently contracted and accruing between parties
   is valid, in absence of fraud.

3. SAME—RENEWAL NOTES SECURED.
   Provision in chattel mortgage that it is to secure indebtedness
   subsequently contracted would be valid for purpose of covering
   renewal notes.

4. PAYMENT—APPLICATION.
   Creditor has right to apply payments as he sees fit, in absence
   of directions as to application from debtor or anyone holding
   under him.

5. SAME—WHEN COURT WILL MAKE APPLICATION.
   Where payments have been made, and no application has been
   made or directed by either party, court will apply such pay-
   ments as justice and equity may require.

6. CHATTEL MORTGAGES—BONA FIDE PURCHASER.
   Bona fide purchaser must have purchased personal property for
   value in good faith and without notice either actual or con-
   structive that it was covered by chattel mortgage.

7. SAME—FILING MORTGAGE GIVES NOTICE.
   Purchaser of personal property covered by chattel mortgage
   properly filed could not be bona fide purchaser.

8. SAME—DEMAND—CONVERSION—NOTICE.
   Where chattel mortgage was properly filed, no demand was
   necessary before bringing suit against purchaser of mort-
   gaged property for conversion.

Case-made from Bay; Houghton (Samuel G.), J. Submitted January 22, 1932. (Docket No. 42, Calendar No. 36,140.) Decided April 4, 1932.

Case in justice's court by Pinconning State Bank against William E. Henry for conversion of property alleged to be subject to a chattel mortgage. Judgment for plaintiff. Defendant appealed to circuit court. Verdict and judgment for defendant. Plaintiff appeals. Reversed.

*Kinnane & Leibrand,* for plaintiff.

*J. L. McCormick,* for defendant.

POTTER, J. .Plaintiff, claiming to have a valid chattel mortgage on one black and white cow seven years old, one red and white cow eight years old, two red cows nine and ten years old, eight pigs, and one black and white heifer calf, sued defendant for the wrongful taking and conversion of the same. There was judgment for defendant. A motion by plaintiff for a new trial was made and denied, and plaintiff appeals. Plaintiff was the owner of a farm situated in Bay county, and sold the same on land contract August 29, 1927, to Walentine Stoinski and Frank S. Stoinski and Joseph Stoinski for $3,000, payable $100 on the delivery of the contract and the remaining $2,900 payable at the rate of $300 a year on December 1, 1928, and yearly thereafter. The purchasers were to pay the taxes on the premises and to improve the buildings to the extent of $400 within one year from date of the contract. Walentine Stoinski also executed promissory notes and chattel mortgages to plaintiff as follows:

February 10, 1928, a promissory note of $247.18 secured by a chattel mortgage covering one black

and white cow seven years old, one red and white cow eight years old, two red cows nine and ten years old, and a black and white heifer calf three months old. This chattel mortgage was filed February 10, 1928, and contained a clause as follows:

"This mortgage to stand as security for all notes held by said second party against them this date. Also to stand as security for any and all notes it may hold against them from time to time, so long as this mortgage remains in force. Intent being that they may want renewals or more funds from time to time and this mortgage given for larger amount to secure such renewals and further advances. Indebtedness to be shown by the promissory notes held by said bank against said first party."

April 6, 1928, Stoinski gave another note to plaintiff of $222.69 secured by a chattel mortgage filed April 7, 1928. July 21, 1928, Stoinski gave plaintiff another note of $387.52 containing a chattel mortgage clause covering red cow nine years, black cow seven years, red cow ten years, red and white cow seven years, two white pigs, black and white heifer eight months old. It was given to renew the promissory note of $222.69 secured by chattel mortgage and for further advances. The chattel mortgage to secure the note of $222.69 was not discharged. The record does not show what this chattel mortgage covered. The $387.52 chattel mortgage note was not filed or recorded. August 27, 1928, Stoinski gave a promissory note for $25.50 secured by a chattel mortgage covering eight hogs four months old. This chattel mortgage was recorded September 20, 1928. There was raised on the farm in 1928 some sugar beets which were harvested and sold and from which plaintiff received $223 which it claims it applied on the amount due on the land contract to it. It had no

chattel mortgage on the sugar beets. Plaintiff also received $250 from the sale of hay and other personal property on the farm, and it claims it applied this $250 on the promissory note of $387.52. Defendant, September 21 and September 22, 1928, bought the property sued for and converted it to his own use. Defendant contends the $223 received from sugar beets and the $250 should have been applied on the chattel mortgage covering the stock purchased by him, and that he is entitled to have it so apply, and, if so applied, the chattel mortgage covering said personal property purchased by defendant was paid, and he is not liable in this suit.

1.   The land contract given by Stoinski to plaintiff was foreclosed for the full amount due thereon, and the amount received from the sale of the sugar beets on the farm in 1928 was not credited on the land contract. In view of this situation, plaintiff should give credit for it upon the amount owed by the mortgagors, who were purchasers of the farm on land contract, and this amount, if there was no other indebtedness, would apply to reduce the amount due upon the chattel mortgages in question.

2.   The chattel mortgage of February 10, 1928, of $247.18, provided in apt language that it was given to secure, not only the amount $247.18, but also any renewals of said notes or any further loans evidenced by promissory notes held by plaintiff against the mortgagor which might thereafter accrue. In the absence of fraud, a provision in a chattel mortgage that it is to secure indebtedness subsequently contracted and accruing between the parties is valid: *King* v. *Hubbell*, 42 Mich. 597; *Hyde* v. *Shank*, 77 Mich. 517; *Rosenthal* v. *Bishop*, 98 Mich. 527; *Crockett* v. *Bearce*, 104 Mich. 257; 11 C. J. p. 474; and it would certainly be valid for the purpose of

covering renewal notes. *Molsons Bank* v. *Berman,* 224 Mich. 606 (35 A. L. R. 1289) ; *Stram* v. *Jackson,* 248 Mich. 171. This chattel mortgage of $247.18, containing the clause above quoted, stood as security, not only for the payment of $247.18, but for the payment of the note of $387.52, together with the interest thereon. The later note of $25.50 was secured by an additional chattel mortgage covering eight hogs, so the entire amount of the indebtedness, outside of that accruing on the land contract, in issue here from Stoinski to plaintiff of $247.18, $387.52, and $25.50 was secured by chattel mortgages.

3. There was evidence the amount secured by plaintiff from the sale of the sugar beets on the farm, upon which it did not have a chattel mortgage, was applied on the land contract. If not so applied, defendant would be entitled to have it credited on Stoinski's indebtedness. If no credit was given for it upon the land contract, and no other indebtedness existed, it should be credited on the chattel mortgage indebtedness.

4. The bank had a right to apply the payments made to it as it saw fit, in the absence of any direction from Stoinski or anyone holding under him, as to the manner such payments were to be applied. The question of application of payments was considered in *Shelden* v. *Bennett,* 44 Mich. 634; *Blair* v. *Carpenter,* 75 Mich. 167; *People* v. *Grant,* 139 Mich. 26; *Harper* v. *Concrete Publishing Co.,* 166 Mich. 429; *Van Sceiver* v. *King,* 176 Mich. 605; *Mauro* v. *Davie,* 236 Mich. 309, and many other cases.

"A debtor owing two or more debts to a creditor, to whom he makes a payment, has a right to direct to which debt it shall be applied, but, in the absence of any such direction, the creditor may apply the

payment to whichever debt he pleases." *Blair* v. *Carpenter, supra.*

"The rule is familiar that a debtor may elect to which of two or more debts his payments shall apply. If he does not so elect, the creditor may elect." *Van Sceiver* v. *King, supra.*

"The law relating to the application of payments is well settled in this State. The debtor may direct the application before or at the time the payment is made. If he does not, the creditor may apply it as he pleases, either at the time the payment is made or afterwards, if before any controversy arises concerning it." *Mauro* v. *Davie, supra.*

This, like many other rules, is subject to exceptions. Where payments have been made and no aplication has been made or directed by either party, the court will apply such payments as justice and equity may require. *Van Sceiver* v. *King, supra.*

"In the absence of direction on the part of the debtor or application by the creditor, if the credit merely appears in the general account and there be no evidence of an understanding to the contrary, the credit will be applied to the debits in the order of time in which the debits occur." *Mauro* v. *Davie, supra.*

So far as the application of the money derived by plaintiff from the sale of the personal property upon the farm, it had a right to apply it as it saw fit upon the indebtedness of Stoinski to it.

5. It is claimed defendant was a *bona fide* purchaser for value. Kindred questions have been discussed in this State in many cases. There is no serious dispute about the rule. To be a *bona fide* purchaser, defendant must have purchased the personal property in question for value in good faith and without notice either actual or constructive.

*Longwell* v. *Day*, 1 Mich. N. P. 286; *First Nat. Bank* v. *Shue*, 119 Mich. 560; *Peters* v. *Cartier*, 80 Mich. 124 (20 Am. St. Rep. 508); *Molsons Bank* v. *Wolf*, 224 Mich. 526; 8 C. J. p. 1146; Words and Phrases, Title, "*Bona fide* Purchaser," 3 Bouvier's Law Dictionary (3d Rev.), p. 2772.

The filing of the chattel mortgage in question was notice, and defendant could not be a *bona fide* purchaser for value without notice. Of course, if defendant had been a *bona fide* purchaser for value without notice, demand would have been necessary to change his rightful possession into a wrongful possession, but, not being a *bona fide* purchaser without notice, no demand was necessary before instituting suit.

This disposes of the principal questions raised by the appeal. The other questions are not likely to arise on a new trial. Judgment reversed, with costs, and new trial ordered.

Clark, C. J., and McDonald, Sharpe, North, Fead, Wiest, and Butzel, JJ., concurred.